UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

ANIS ABDULLOEV,
Petitioner,
v.
SIXTO MARRERO, et al.,
Respondents.

Case No.: 26-CV-05805 JAO (DEB)

**ORDER GRANTING WRIT OF HABEAS CORPUS**

(ECF No. 1)

Before the Court is Petitioner Anis Abdulloev's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1). Also before the Court is Respondents' Response to the Petition (ECF No. 4) and Petitioner's Traverse (ECF No. 5).

For the reasons set forth below, the Court **GRANTS** the Petition on due process grounds.

**BACKGROUND**

Petitioner is a citizen of Tajikistan and Russia who arrived in the United States on or about October 30, 2021, and was released into the country on parole. *See* ECF No. 1 ¶ 1. Petitioner was permitted to remain physically at liberty for more than four years. *See id.* ¶ 4. During this time, Petitioner received work authorization, became a direct beneficiary of his family's application for asylum, and established substantial ties to the

local community. *See id.* ¶¶ 2–4. However, on or about June 29, 2026, Petitioner inadvertently crossed the border into Mexico and immediately presented himself to immigration authorities, upon which he was taken into custody. *See id.* ¶ 6. Petitioner was not given a Notice to Appear or a hearing prior to his re-detention. *See id.* ¶¶ 7–8.

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

Petitioner argues that his detention violates his right to due process because Respondents took him into custody without notice and without identifying any changed circumstances that would justify his re-detention.[1] *See* ECF No. 1 ¶¶ 38–54. Respondents acknowledge that Petitioner was previously released from immigration

---

[1] The Court need not address Petitioner's claim arising under the APA because the Petition can be resolved on due process grounds. However, the Court notes that other courts have found violations of the APA based on similar grounds. *See, e.g.*, *Navarro Sanchez*, 2025 WL 2770629, at *4 (finding revocation of petitioner's parole arbitrary and capricious because respondents did not state any reasons for the revocation); *Noori*, 2025 WL 2800149, at *3 ("Petitioner's parole was revoked without an individualized determination or provided reasoning, which violated the APA.").

custody on parole. *See* ECF No. 4 at 2. They thus do not oppose the Petition. *See id.* at 3.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (9th Cir. 2001). "[I]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Pinchi*, 792 F. Supp. 3d at 1032 (citing *Romero v. Kaiser*, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022)).

Petitioner has been out of custody since 2021, when the government implicitly determined he was not a danger to the community or a flight risk and released him from detention. There is no suggestion that Petitioner violated the terms of his release in the years he has been out of detention. *See generally* ECF No. 4. Petitioner thus has a protected liberty interest continuing to remain out of custody. *See, e.g.*, *Pinchi*, 792 F. Supp. 3d at 1034 ("[The petitioner's] release from ICE custody after her initial

apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [the petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."); *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1164 ("Petitioner is not an 'arriving' noncitizen but one that has [been] present in our country for over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal."); *Alvarenga Matute v. Wofford*, 807 F. Supp. 3d 1120, 1129 (E.D. Cal. 2025) (finding the petitioner had a protected liberty interest in his release).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Mathews* factors. *See Mathews*, 424 U.S. at 335. Courts must consider:

> (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.*

The Court finds that all three factors support a determination that the Government's re-detention of Petitioner without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his release in 2021. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690; *see also Morrissey*, 408 U.S. 471 at 482 ("Subject to the conditions of his parole, he can be gainfully employed and is free

to be with family and friends and to form the other enduring attachments of normal life.”).

Second, the risk of an erroneous deprivation of such interest is high as Respondents revoked Petitioner’s release from custody without providing Petitioner with notification, reasoning, or a hearing. Since the government’s initial determination in 2021 that Petitioner should be released because he posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) (“Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.”). Indeed, after his release from custody, Petitioner has apparently complied with all conditions of release. “Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk[.]” *Saravia*, 280 F. Supp. 3d at 1176. “Where as here, ‘the petitioner has not received any bond or custody hearing,’ ‘the risk of an erroneous deprivation of liberty is high’ because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [her] detention.” *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025)) (cleaned up).

Third, the Government’s interest in detaining Petitioner without notice, reasoning, and a hearing is “low.” *See Alvarenga Matute*, 807 F. Supp. 3d at 1130; *Pinchi*, 792 F. Supp. 3d at 1036; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (“If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.”).

Therefore, because Respondents detained Petitioner by revoking his release in violation of the Due Process Clause, his detention is unlawful. *See, e.g.*, *Monroy Martinez v. Lyons*, 2026 WL 1047937, at * 5 (S.D. Cal. Apr. 17, 2026) (granting a writ of

habeas corpus on due process grounds where the petitioner's release on bond was revoked); *Navarro Sanchez v. LaRose*, 2025 WL 2770629, at *5 (S.D. Cal. Sept. 26, 2025) (granting a writ of habeas corpus releasing petitioner from custody to the conditions of her preexisting parole on due process grounds).[2]

## CONCLUSION

Based on the foregoing, the Court **GRANTS** the Petition for Writ of Habeas Corpus (ECF No. 1), and **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions of his preexisting release. The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons for revocation of his release and a hearing before a neutral decision maker to determine whether detention is warranted. The government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight. *See, e.g.*, *Pinchi*, 792 F. Supp. 3d at 1038. The Parties are **ORDERED** to file a Joint Status Report by <u>November 17, 2026</u>, confirming that Petitioner has been released.

**IT IS SO ORDERED.**

Dated: November 5, 2026

Jill A. Otake
United States District Judge

---

[2] Petitioner's brief inadvertent entry into Mexico does not affect the Court's analysis in ordering Petitioner's release from custody. *See Rosenberg v. Fleuti*, 374 U.S. 449, 462 (1963). The government does not discuss Petitioner's entry into Mexico in the Return and thus does not appear to contest this. *See generally* ECF No. 4.

In the Return, the government also raises Petitioner's arrest on felony charges on November 23, 2025. *See* ECF No. 4 at 2. Besides the fact that the charges were dismissed, *see* ECF No. 5 at 4, the government does not appear to contend that Petitioner's arrest serves as a bar to his release.